The next case is Applications In Internet Time v. Salesforce, 2025-2026. Mr. DiFrancenzo, good morning. Good morning, Your Honor. The first issue before this Court is whether a 2006 agreement unambiguously represents a present assignment of all rights, title, and interest to the patents of suit by virtue of its sale of a 2002 agreement. I'm going to start with the 2002 agreement that's sold. The 2002 agreement, with respect to ASI's assets, represents a promise to transfer those assets to a third party. Well, it says, is hereby sold. That's a statement of present action. Yes. And what is sold is the agreement. Yes, well, that's not very good language. But isn't it clear when one looks at 2002 agreement that we're talking about the intellectual property, the patents? Yes, but the rights to those patents were not sold under the 2002 agreements to any of the parties. Therefore, by selling the agreement, Ms. Nelson had the right to enforce the agreement. Ms. Nelson herself did not receive, by virtue of the first clause, either present or future rights to ASI's assets. She received the right to enforce ASI's agreement to transfer it to HMB. Now, the disconnect is the parties receiving rights to ASI's assets were not parties to the 2002 agreement. They were third parties. So therefore, when those parties sold their interest in the agreement to Ms. Nelson, they didn't sell rights to receive ASI's assets either. I want to understand what you're saying, but I'm having a hard time understanding it. My understanding of this 2006 agreement is that something was sold to Ms. Nelson. And that something is the 2002 agreement. And to me, the most straightforward understanding of that is the contents of the 2002 agreement. And that includes the asserted patents here. All right, now you have a different view of things. And understanding now how I sort of simply, straightforwardly think about this, can you explain why that's not correct? Yes, Your Honor. Because the sale of the agreement sold the party's rights under the agreement. ASI didn't receive its rights to the patents via the 2002 agreement. They already had them. They made one promise to transfer them to a third party. That promise was not made to the parties under the agreement. And in the context of this transaction, Ms. Nelson wanted control. It wasn't about ownership. So when they sell the agreement to her under the first clause, and the district court didn't rely on the first clause, when they sell the agreement to her, what can she do? She has all the party's rights. That's the right to enforce it against ASI. And say, ASI, I want you to transfer it to HMB. If you don't, I can sue you. But that's the first clause. She has the right to enforce the agreement. It's not the property right. It's not the right to pass damages or invention. The right to license is invention. It's not a patent assignment on its face, the 2002 agreement. So if the 2002 agreement's not a patent assignment, doesn't grant rights to the patents to any of the parties, how does the sale of that agreement transfer all property rights to all assets mentioned in the agreement? But the following sentence in the 2006 agreement says, the waiver of reservation shall be irrevocable. All title and interest liability set forth in the 02 agreement shall transfer and hold to Nelson. And that sounds like the patents. Yes, but in the context of the 2002 agreement, it uses will transfer to the third parties. So now we get to the 2006 agreement, and they're saying, you have the right to enforce. But now instead of these patents having to go from ASI to a third party, now they have to go to you, subject to your right, to terminate, modify, or discard. So those two, clause 2 and 3, should be read together and can reasonably be read that way at a minimum. I want to know how you're reading the second sentence about all right, title, interest, and liability shall transfer to Nelson. I'm reading that as, in the context of the first clause, she has the right to enforce the third party sale. So now in the context of the second clause, instead of having the right to force the third party sale, she has the right to acquire the assets from ASI. Because set forth can't mean she currently owns all the assets and all the information mentioned in the agreement. There's things like 401k, insurance, things like that, were obviously not intended to be assigned to her. And really, if you look at the third paragraph, not clause, of the 2006 agreement, it specifically refers to contemplated future transactions. Well, that does say shall transfer. But in the context of the previous statement, which is a statement of present sale, then it isn't necessarily a future statement. Obviously, these agreements are not well drafted. But our job is to determine, reviewing the district court, what the intentions of the parties were. And if the agreement, and I agree with you, if you find the agreements not well drafted, well, then the district court erred under US Cellular. And then the parties agree on the standard. If it can be reasonably read in the manner consistent with the acts and conduct of the parties before a dispute arises, then it should be construed that way. And it can at least reasonably be read that way. And the key thing is, that 2002 agreement, no one received present or future rights to ASI's assets. So therefore, the first clause should be dead on arrival. Because she could not have received rights that weren't granted. And since ASI did not grant any rights to any of the parties in the 2002 agreement under the first clause, she did not receive any rights with respect to ASI's assets. I'm sorry. The clearest quote, maybe not clear, the best indication of intent is that Nelson should get the rights, which means that AIT doesn't. When you say ASI should get the rights, subject to her right to discard or terminate that clause, she shall have the right to discard that clause. And that's why the intent and conduct matters. It was just like in 2002, where you enter a future transfer using will transfer. And we all agree after 2002, all right, title, and interests remained with ASI, subject to the will transfer clause. That could be enforced against it. And it's the same thing with paragraph 1. Paragraph 2 changes or can be reasonably read. Didn't Sturgeon at some point say that Nelson got all the rights here? He mentioned at deposition he did. He said it sold everything. But he also said at deposition, earlier in the deposition, that ASI retained ownership. And when he mentioned, talked about ASI retaining ownership, he said ASI retained ownership in 2012. Now she had rights, but they were future rights. She didn't have patent rights. I guess I don't understand what Sturgeon meant when he said, yeah, sold everything to Miss Nelson. He meant control, because that's what this was about. And the district court, and under Salesforce's construction, the third clause means nothing. If she discards it, she still owns it. If she terminates the very section A of the agreement, section A of the 2002 agreement is the only section that defines ASI's assets and the future transfer, and she retains the right to terminate that clause, that can reasonably be read, reasonably, consistent with the party's conduct to reflect control. Now on appeal, Salesforce argues no, that her control is a reflection of ownership. And what they're doing is reading out the clause entirely. Now the district court in ruling against AIT found language cannot be read out of the contract. And if you're reading in a redundancy, that's wrong as a matter of law. And now they're saying it's clear and unambiguous, clear and unambiguous, that the third sentence means nothing. That if she cancels, discards, or terminates the very clause in the 2002 agreements defining ASI's assets, she still owns that asset, those assets. And I don't think that's a fair reading. But I don't have to prove it's not a fair reading. They have to show this court must interpret it. And the reason they do is because the conduct and acts of the party is undisputed here. And lastly, very quickly on the equitable relief, the court made two legal errors in denying relief. The court said AIT had to move at the time they first filed their motion. Jones is directly and unambiguously inconsistent with that. It's Ninth Circuit law, and it's directly on point. They cited two Second Circuit cases, but that's not what the judge was required to follow. Second, on the constitutional issue, we're squarely within the four corners of Schwendemann. And the reason we're in the four corners of Schwendemann is because we have both the promise from the actual owner that it was intended to be owned by the plaintiff, and we had the plaintiff believing in good faith it's the owner and alleging as such. So when you have the person who's the true owner and the person who's the plaintiff both believing prior to litigation in good faith that the plaintiff had all right, title, and interest, and here the error was one of execution of an agreement. Mr. Sturgeon was tasked with getting the patents from ASI to AIT, and the court found that he executed on behalf of the wrong party. But there's no dispute he had the authority to enter that agreement, and that authority should have been presumed under CERFTEC because these assignments were filed with the Patent Office. I'll reserve the rest of my time. I'll save it for later. Mr. Schaffer. Good morning, Your Honors. May it please the court. We submit that affirming in this case should be straightforward so long as the contractual assignment means what it says, AIT was never a proper plaintiff from the day the lawsuit was first filed back in November 2013. Nor can a foundational standing defect be cured a decade later. But even if it might be cured, Your Honors, in inappropriate circumstances, it suffices to note that denial of such extraordinary relief on reconsideration post-dismissal for lack of jurisdiction was well within the district court's discretion. Let me start with the contractual assignment, Your Honors, which I read the way that I think Your Honors were indicating. And we just think that the appellant's interpretation is untamable. We haven't indicated yet how we read them. We're just asking questions. Fair enough, Your Honor. I don't mean to presume anything, Judge Lurie. Let me say that I, reading the agreement, don't see how the other side can simultaneously give meaning to the 2006 agreement, yet deny that there was a present assignment of the patents. Let me ask you. 2006, the agreement is sold. Does it say the patents are sold? It says hereby sold, Your Honor, in the context of trying to dispose with clarity of everything that was subject to the 2002 agreement. And there's no dispute that the patents in suit are specifically referenced as part of the 2002 agreement as among the assets. But then, Your Honors, it doesn't end with the first sentence. There is, of course, the second sentence, too. And let's just read it together. The beginning of it, Your Honors, is that the waiver of reservation of any provision shall be irrevocable, complete, and total. Then there's a semicolon, Your Honors. That surely is a present specification of shall. That is a present command. I do not think it would be available to a party to this to say, well, that's a future contingent shall, and we still retain a waiver of reservation of any provision. It's speaking with total clarity that pursuant to the hereby sold, you have no waiver or reservation. That is gone. But what about the last sentence? Shall have the sole and exclusive right to modify, terminate. Those sound like not ownership of patents that one's disclaiming or assigning, but talks about provisions of an agreement rather than ownership of the assets. Well, Judge Lurie, even assuming that that is true, I don't think it is. We're not ruling out that it was open to Ms. Nelson as the receiver of the transfer to take what was specified in A, B, and C. And as she could dispose of it, as she could claim it, she could also send it back. She could have a waiver or modification. Paragraph 3 of the agreement specifies how you could have any such amendment or waiver. It must be in writing. So for the avoidance of any doubt, paragraph 1 is saying it is available to Ms. Nelson as to what is the subject of sections A, B, and C to have such a waiver or amendment. But the subject of the sections A, B, and C? Your Honor, it's a number of different things. But there was, including, I believe, the patents in suit that were the subject of the 2002 agreement. But I think it suffices to note, Judge Chen, there was never the waiver or modification by Ms. Nelson, which would have needed to be in writing. All I submit to your honors is just to follow up on Judge Lurie's point, if, in fact, the first two sentences were a clear assignment of title to these patents, then this third sentence looks a little peculiar why it's even there. Of course, she has the right to do whatever she wants with that now received right to the patents. But this third sentence is clearly contemplating something beyond that. Well, Judge Chen, there are other things that also flow here. It's not just the assets. And I could get through A, B, and C and what is the subject of them. But I don't think that it is denying meaning to this third sentence to say, for the avoidance of any doubt, it specifies that Ms. Nelson can do what any owner can do. She can, if she wants, assign the patents back. And it's important to note that the subject of the preceding second sentence, we talked about the first part before the semicolon. Just that, I mean, that is part of the problem, right? That third sentence. I understand you to be saying it's allow her to do what anyone who has the patents is allowed to do. So the question is, why then is it necessary? Well, Judge Chen. You know, I mean, really, in that sense, it might support a different reading of the first two sentences. I see. I mean, when we look at contracts, I do see sentences like that all the time, Judge Stoll. And the reason why I think you would have as a careful draft for that sentence is maybe you have a side agreement. Maybe it is agreed, in parallel with this agreement, that the patents in suit, instead of going where they are going under this all-encompassing language, maybe they would remain with the transferor. And that was something that Ms. Nelson could agree to. And she could have a written agreement that so memorializes. And for the avoidance of any doubt, it's totally compatible with this agreement. And I think it avoids any confusion. It avoids any notion that she's getting, necessarily and for all time, the patent rights. I don't think that it should transform the clarity that you find in the preceding sentences. And just one more time, Your Honors, there is that shall in the waiver of reservation of any provision. That's not a future contingent shall. And then the second shall, after the semicolon picks up, all right, title, interest, and liability set forth in the April 24, 2002 agreement shall transfer and hold to Ms. Nelson. To say that that's future and contingent would say that Ms. Nelson wouldn't have to take the liability. She could just as easily say, I'll leave the liability untransferred, things like the 401k. That clarity would be totally defeated, and I would submit negated, Your Honor, if there is a future contingent transfer. At what point in the future and contingent upon what? This is not the normal sort of inventor assignment provision that this court has encountered, where the future contingency is that there's a subsequent invention by the inventor. That's an intervening circumstance. And then at that point, there will be an assignment. This agreement was giving clarity that at this point in time, everything that was a subject of the 2002 agreement shall transfer. It's pursuant to hereby sold. It is irrevocable as of the moment of the sale. And my submission to Your Honors is that the patents ensue flow with the whole transfer, and that there's no future contingency that would make sense in this context. How do you react every time you use the word clarity? Well, Your Honor, I think that if the agreement doesn't mean what we think it means, I do think it renders the agreement a nullity, because there's no indication as to at what future point in time or what agent would actually make sure that the hereby sold and the shall transfer and the shall be irrevocable, how does that ever activate? And so our submission is it happened by its terms upon the sale of the 2002 agreement pursuant to the 2006 agreement. Yes, Ms. Nelson could have changed the result as to the patents ensued, but she never did that pursuant to her writing. And so I think it's clear enough, Your Honors. And I think the district court was right to read these provisions as unambiguous, reading the contract as a whole, reading it together. And I really don't know what my friend's answer is as to what was the practical meaning of the 2006 agreement if it was all future and contingent. What was sold? Just the pages, the pieces of paper of the 2002 agreement? I don't think you can read this paragraph 1, whether it could have been worded somewhat clear or not. I don't think you can read it as saying just the paper of the 2002 agreement. Those pages were being sold when this agreement was executed. And so if we're right, Your Honors, about the contractual assignment, if the district court is right about the contractual assignment, if Mr. Sturgeon was right when he said at deposition what I would say, that everything had transferred, you can find that in appendix 3233, 3234, that really does decide the case, Your Honors. Because then it follows that AIT was never a proper plaintiff from the inception of the lawsuit. It never had any persisting claim to the patents. And that is an Article III jurisdictional defect, just as the district court found it. Can I pass between when the case was filed and when this was raised? I'm sorry, yes, so? What was the time period between when the case was filed and when this defense was raised? The case was filed, I believe, in 2013, November 2013. There was initial discovery that was provided by AIT as to any attempted transfers of the patents in suit. And that discovery was provided, I think, sometime in 2014. And it omitted the key agreements that we're focusing on. The 2002 agreement, the 2006 agreement were not produced as part of that discovery. You can find it in appendix 207, 210, 5226, and 27. And so we didn't know about these agreements until third party discovery ensued. And a third party then produced the agreements in question, particularly the 2006 agreement. And then following that, I believe it was in October 2022, a few months following that production after we'd gone through the materials, that we moved to dismiss. That's in appendix 116. But it's not, Judge Stolt, until after all the motion to dismiss briefing, after the motion to dismiss hearing, where the district court was making clear that she read this agreement the way that she read it as a present transfer of the patents in suit. And you can see, if you want to take a look, appendix 143, she says that right then in March 4th, there's no indication by AIT that they're seeking any alternative relief under rule 17, based on reformation of the agreement, anything. And so it's after there is the dismissal order, a dismissal for lack of jurisdiction, that AIT first comes back seeking reconsideration and saying there should be relief under rule 17 and there should be reformation of the agreement. Your honors, that's after the district court had found it lacked subject matter jurisdiction to do anything. So I don't think it would have been available to the district court in that posture to grant that relief. But certainly, it wasn't an abuse of discretion to say, why wasn't there some indication that you might seek these alternative forms of relief? I will speak briefly, your honors, to the rule 17 relief. The terms of rule 17 say it needs to be, such a request needs to come within a reasonable time after an objection. The Jones case from the Ninth Circuit that my friends rely upon was one where you had the proper plaintiff that was named. It just was kind of a legal technicality that the father, who was properly the plaintiff, had not been named in his official capacity as administrator. So it was just a question of, and there was also a stipulation that the amended complaint would properly name the father as it did. So there was surprise when the district court said that there was this technical defect. It was an issue, if anything, of prudential standing. It wasn't a fundamental Article III disconnect where the putative plaintiff had not suffered any injury, in fact. So it's quite different. And I also don't know that Ninth Circuit law governs this, given that we're talking about questions of patent law and patent assignment. And certainly, there wasn't an indication from the Ninth Circuit that every time you have a dismissal for lack of standing, because the putative plaintiff has not been injured, every time you can say, well, maybe somebody else is the plaintiff who's been injured, that means a district court has to go through a rule 17 analysis before it dismisses without prejudice. And I would emphasize that, too, Your Honors. This is a dismissal without prejudice. It's not a dismissal on the merits. It's just a dismissal for lack of subject matter jurisdiction. The action's been refiled, is that right? That's correct, Judge Shannon. I don't know that it's been served, but it has been refiled with, you know. In whose name? I defer to my friends to the other side. I think Ms. Nelson may be part of it, or has joined as a plaintiff, or else she is purported to make the assignment that would enable AIT to be proceeding as a plaintiff. But I defer to my friends for that. Then there's the question of contractual reformation. Your Honors, I don't think that that contractual reformation under state law could ever be granted by a federal Article III court that lacks jurisdiction to do anything. And certainly, if the district court were ever going to be asked to do that, it should be happening before the district court is dismissed for lack of jurisdiction. I don't think that the district court that said, I lack jurisdiction to do anything here, can rewind and say, I'm exercising my powers to change an instrument under state law. And last, Your Honors, I submit what I did to Judge Lurie. I think that there is clarity in this agreement that would be undone through the reformation. I don't think that's a proper use of contractual reformation. I think it would be more in the nature of rescinding the agreement to say, it does not mean what it says. And effectively, all of its provisions, the shall transfer, are negated. Why are we struggling with this if another suit is pending that resolves the question? Well, you have to ask the plaintiff that. I think that they want to have it treated as a lawsuit that has been on file since November of 2013, would be my speculation. But I would submit that if they wanted it treated that way, they needed to have the right plaintiff and to have done all this diligence at that point in time, or at least somewhere along the way to have realized there was this issue and have adjoined or do something while a district court was considering the jurisdictional question. We're going to get an answer in 37 seconds. OK, Your Honors. I may allow them to answer sooner than that, unless Your Honors have further questions for me. Thank you, counsel. Thank you, Your Honors. Mr. Diefensensoy. I'd first like to start by saying we did tell the court in our opposition to their motion. Did you refile an action? We refiled an action, yes, Your Honor. OK. But we haven't served it, because to the extent that this court finds that ASI, AIT, properly has jurisdiction, or that the equitable relief requested should be granted, then we don't believe there will be jurisdiction, because it's only contingent. What good can we do here if the case is brought where this issue won't come up? What good could you do here, Your Honor? I don't understand the question. The question that Judge Lurie asked your opposing counsel there was that, why is this case being filed if you already have another lawsuit that you've brought? Why are we here? We felt we had an obligation to preserve potential damages. OK. And that's the reason. But I think if we look, two things. One, they said we didn't raise the issue of potential curing our opposition. We sure did. If you look at our opposition at 85196, we told the court that this is an issue of statutory standing, and to the extent it is, we can cure it. So we told the court in opposition, but we just didn't move at the time, because the rights wasn't AIT's to move. It was Ms. Nelson's. Ms. Nelson was ill at the time and was 84 years old, and she would have to verify and agree to be bound by a litigation where she didn't believe she had any rights to it. And while they attempted to distinguish Jones, Jones is about the notice. Jones says the notice under Rule 17 in the Ninth Circuit, and that's a procedural matter on timing. Jones says notice is when the court orders. Otherwise, a party such as Ms. Nelson would have to agree to be bound by a litigation where you don't think you have any rights to it? It's not AIT that would be prejudiced in that situation. It's Ms. Nelson. And the law in the Ninth Circuit doesn't require timing on that basis. And on the constitutional, we're squarely under Schwedeman, because she wanted them to have the rights, and only because of the mistake in the execution of the assignment. And also, Salesforce has never disputed that the 2012 assignment should have been presumed ballot. Mr. Sturgeon, in the 2012 assignment, states, I have full authority to sign this. And that's on the second page of the assignment, the second to last paragraph, the last sentence. He says, I have full authority to sign this. If they wanted to challenge that as a factual matter, the burden was on them. These were filed with the Patent Office, and they never addressed technology. They never attempt to overcome their burden, that even if the 2006 agreement could be read as an assignment, certainly, given the third clause in the 2006 agreement, Mr. Sturgeon, with Mrs. Nelson's authority, had the right to transfer all right and title and interest in the patent. Counsel, your red light is on. You have exceeded your time. Thank you to both counsel. Cases submitted.